HOOD, Judge.
This is an action primarily for judgment decreeing an act of sale to be a fraudulent conveyance and thus null and void. The plaintiffs are Mrs. Veatrice Mary Per-rault Parks Carmouche, Maxey Joseph Parks and Mrs. Geraldine Parks Ramirez. The suit was filed against Sylvester House Moving, Inc., Oscar Sylvester, Jr., James Warren Sylvester, Adam Vidrine, Jr., Maurice T. Manuel and Laurel Chapman. Upon application of plaintiffs, a receiver was appointed for the defendant corporation and a temporary restraining order was issued prohibiting defendants from disposing of the property which allegedly had been sold.
Defendants answered and filed a number of other pleadings, including a motion to vacate the order appointing a receiver, a motion to dissolve the temporary restraining order, and a petition for judgment condemning plaintiffs to pay damages for the wrongful issuance of such orders. The issues presented by these pleadings were referred to the merits, and after trial, judgment was rendered by the district court in favor of defendants and against plaintiffs, rejecting plaintiffs’ demands, condemning plaintiffs to pay damages in the sum of $3,700.00 to defendant Adam Vidrine, and condemning plaintiffs to pay damages in the sum of $500.00 to each of the defendants, Oscar Sylvester, Jr., and James Warren Sylvester. Plaintiffs have appealed.
The principal issue presented is whether an act of sale executed by Sylvester House Moving, Inc., on April 11, 1969, and purporting to convey several items of house moving equipment to James Warren Sylvester and Adam Vidrine, Jr., is null and void as being a fraudulent conveyance.
Sylvester House Moving, Inc., was incorporated in August, 1964, with 350 shares of authorized stock and with Oscar Sylvester being the principal stockholder. Sylvester owned 348 of those shares, his wife owned one share and an employee, Maurice T. Manuel, ownéd the remaining share. For about five years thereafter, the corporation was managed solely and completely by the principal stockholder, Oscar Sylvester. The other two shareholders took no part in the operation of the business, they received no dividends of any kind and each surrendered his share to Oscar Sylvester when requested to do so and without the payment of any consideration.
When the corporation was formed, Oscar Sylvester turned over to it some house moving equipment, including two tractors, a truck, some trailers and some house moving rollers, and this equipment was used thereafter in operating the business of the corporation. The corporation executed an unsecured promissory note, dated sometime in 1964, made payable to the order of Sylvester, for the sum of $17,500.00. Sylvester testified that this note evidenced the indebtedness of the corporation to him personally for the above-mentioned equipment. No payments were ever made on that note.
About two years later, on December 8, 1966, Sylvester caused the corporation to execute and to substitute for the unsecured note another promissory note for $17,500.00, made payable “on demand” to the order of “Holder or Holders,” and that note was secured by a chattel mortgage. The chat *364 tel mortgage was not introduced in evidence, so we are unable to determine what movable property was affected by it. Defendants argue, however, that it covered most of the house moving equipment which Oscar Sylvester had “sold” to the corporation more than two years prior thereto. Sylvester, of course, was still the principal stockholder and sole manager of the corporation at the time that mortgage note was executed, and he also became the holder of that note. The note was signed in behalf of the corporation by Laurel Chapman, secretary-treasurer, but Chapman testified that his one share “was given to me in the first place, and I just transferred it back.”
When asked why this mortgage note was executed, Sylvester explained, “I use mortgage notes as collateral when I want to borrow,” and that “the reason I have them made to Holder or Holders, then you can use that note to any individual or bank and use it as collateral * * * ” According to the evidence three payments were made on the 1966 mortgage note, all of which were made during the latter part of the year 1968. A payment of $1,000.00 was made on August 27, 1968; $1,000.00 was paid on November 12, 1968; and a payment of $1,100.00 was made on November 25, 1968. These appear to be the only payments which have been made on that note.
On August 10, 1967, while Sylvester House Moving, Inc., was engaged in moving a house for plaintiffs, the house was dropped and was damaged. Plaintiffs instituted a suit against Sylvester House Moving, Inc., in the 18th Judicial District Court, Parish of Pointe Coupee, to recover the damages they sustained as a result of that accident. That suit was filed on September 1, 1967, and it went to trial on May 6, 1968. Judgment was rendered by that court on January 6, 1969, in favor of plaintiffs and against Sylvester House Moving, Inc., for the sum of $7,950.00. The defendant corporation timely filed a motion for a new trial, and judgment was rendered by the trial court denying that motion on March 17, 1969.
A few days later, on April 11, 1969, an act of sale was executed by Sylvester House Moving, Inc., conveying to defendants, Adam Vidrine and James Warren Sylvester, “all equipment and machinery belonging to vendor,” including two tractors, one truck, several trailers, some house moving rollers, some house moving jacks, and “Certificate #5334-A issued by the Public Service Commission.” As the sale consideration for the property conveyed, the deed recited that:
“This sale is made and accepted for and in consideration of the purchasers assuming the payment of the mortgage for $17,500.00 plus 8% interest and 25% attorney fees dated Ville Platte, Louisiana, June 23, 1966, which has a balance of approximately $15,000.00 created by Act before Jack C. Frugé, Notary Public, on the 23rd day of June, 1966 in favor of Holder or Holders and which mortgage is recorded at the office of the Clerk of Court, Evangeline Parish, Louisiana.”
That deed, formally labeled as a “Cash Sale and Assumption,” was filed in the Conveyance Records of Evangeline Parish on April 14, 1969.
Defendants take the position that the “mortgage” which Vidrine and James Sylvester assumed as the purchase price of the equipment and machinery described in the deed dated April 11, 1969, was the same mortgage note which had been given to Oscar Sylvester in 1966 as a substitute for the original unsecured note. We observe, however, that the “mortgage” which was assumed in that deed was dated June 23, 1966, whereas the note, secured by a “chattel mortgage,” which the corporation gave to Oscar Sylvester as a substitute for the original note was dated December 8, 1966. We are unable to determine from the record, therefore, what indebtedness was actually assumed by the purchasers in that deed. It appears, however, that they did not assume the last-mentioned chattel mortgage note.
*365 On May 2, 1969, plaintiffs filed in the Mortgage Records of Evangeline Parish a certified copy of the judgment which had been rendered against Sylvester House Moving, Inc., by the court in Pointe Coupee Parish. A few months later, in September, plaintiffs learned that the assets of the corporation had been sold to Vidrine and James Sylvester. They then instituted the instant suit on October 15, 1969.
In this suit plaintiffs, among other demands, prayed for judgment: (1) making the judgment rendered in favor of plaintiffs by the 18th Judicial District Court executory in Evangeline Parish; (2) decreeing the sale to Adam Vidrine and James Warren Sylvester, dated April 11, 1969, to be fraudulent and void as against plaintiffs; (3) appointing a receiver for Sylvester House Moving, Inc.; (4) ordering Vidrine and James Sylvester to account for the property received by them at the above-mentioned sale; and (5) enjoining defendants from disposing of any of said property.
An order was issued at the time the suit was filed, appointing a receiver for Sylvester House Moving, Inc., and granting a temporary restraining order directed to defendants, prohibiting them “from disposing of any of said property, or paying away any of the proceeds thereof, or in anywise interfering therewith.” After a hearing on a motion to vacate that order, judgment was rendered on November 26, 1969, setting aside the order appointing a receiver, dissolving the restraining order, and reserving to defendants the right to claim damages.
Judgment also was rendered by the trial court on January 28, 1970, decreeing the judgment rendered by the 18th Judicial District Court, in favor of plaintiffs and against Sylvester House Moving, Inc., to be executory in Evangeline Parish.
The remaining issues, and particularly those relating to the validity of the deed dated April 11, 1969, and to defendants’ claim for damages for the alleged wrongful issue of the temporary restraining order, were tried on February 5, 1970, and judgment was rendered by the trial court on June 18, 1970, rejecting plaintiffs’ demands and condemning plaintiffs to pay damages to defendants, all as above set out.
Defendant Adam Vidrine had no interest in the house moving corporation prior to November 16, 1967. He testified, however, that on that date he purchased from Oscar Sylvester 174i/¿ shares of stock in that corporation, that being one half of all of the stock which was owned by Sylvester. Following that sale, Vidrine and Oscar Sylvester each owned 1741/2 shares, and we gather from the record that the one remaining share was given to or was listed in the name of Laurel Chapman, an employee. The damage suit against the corporation was pending, of course, when Vidrine purchased these shares of stock. In spite of the substantial interest which Vidrine owned in the corporation, he took no part in managing the house moving business between the time he acquired that stock in 1967 and the time he later joined young Sylvester in purchasing the assets, in 1969.
After the assets of the corporation were sold to Vidrine and James Sylvester on April 11, 1969, Vidrine took over the active management of the house moving business. He testified that when that sale was made no stockholders’ meeting was held, but that “Mr. Sylvester just offered it to me,” and that Vidrine “decided to go into the house moving business myself for tax proposition.”
James Warren Sylvester is the son of Oscar Sylvester, Jr. He was a college student at the time this sale was made. He paid nothing for his one-half interest in the entire assets of the corporation, except the assumption of a “mortgage” dated June 23, 1966, and he has never taken any part in operating the corporation. He testified, in substance, that his father merely vested title in him, so that after the profits of the business paid out the mortgage indebtedness *366 to Oscar, then young Sylvester would own a half interest in the business.'
After Vidrine assumed control of the house moving business on April 11, 1969, the business continued to operate from the same location, and the equipment remained stored on the same premises where it had been stored prior to that date. These premises were owned by Oscar Sylvester, Jr.. Vidrine testified that he, did not pay any rent for the use of those’.premises after he bought the equipment. He .stated that when that sale was made on April 11, 1969, he was fully aware of the mortgage which had been executed in favor of Oscar Sylvester, and of the judgment which had been rendered against the corporation in favor of plaintiffs.
The trial judge concluded that Vidrine and young Sylvester paid $16,500.00 for the house moving equipment on April 11, 1969. He arrived at that figure by subtracting the three payments which previously had been made on the December 8, 1966, mortgage note by the corporation, and then adding thereto the accrued interest. The court held that the sale had been entered into in good faith, that plaintiffs had suffered no injury because the amount due on the chattel mortgage in favor of Oscar Sylvester, Jr., exceeded the value of the assets of the corporation, and that the sale to Vidrine and young Sylvester thus was not void as being a fraudulent conveyance. We are unable to agree with these conclusions of the trial court.
The law gives to every creditor the right to maintain an action to annul or to revoke any contract made in fraud of the creditor’s rights. LSA-C.C. arts. 1968— 1994.
Articles 1969 and 1970 of the Louisiana Civil Code provide:
“Art. 1969. From the principle established by the last preceding article, it results that every act done by a debtor with the intent of depriving his creditor of the eventual right he has upon the property of such debtor, is illegal, and ought, as respects such creditor, to be avoided. This can be done in the mode and under the circumstances set forth in the following rules.”
“Art. 1970. The law gives to every creditor, when there is no cession of goods, as well as to the representatives of all the creditors where there is any such cession, or other proceedings by which they are collectively represented, an action to annul any contract made in fraud of their rights.”
The prerequisites for the revocatory action are: (1) Insolvency of the debtor; (2) injury to the creditor; (3) intent to defraud the creditor; and (4) pre-existing and accrued indebtedness. National Bank of Bossier City v. Hardcastle, 204 So.2d 142 (La.App. 2 Cir. 1967); Comments, 9 Tul.L.Rev. 422 (1935). We think all of these circumstances existed when the entire assets of the corporation were sold on April 11, 1969.
The evidence shows, for instance, that the debtor corporation was insolvent. The deed purports to convey not only “all equipment and machinery belonging to the vendor,” but also the certificate issued by the Louisiana Public Service Commission which authorized the corporation to engage in the house moving business. Defendants concede that in view of that conveyance the corporation is insolvent. They, in fact, urge as one of their defenses to this rev-ocatory action that the corporation was insolvent, that plaintiffs could not have recovered anything even if the sale of its assets had not been made, and that plaintiffs thus are not entitled to have the sale of its assets revoked.
We believe the record shows that plaintiffs will sustain a substantial injury if the sale of the corporation’s assets is allowed to stand, and that the trial court erred in failing to reach that conclusion. The trial judge assigned as one reason for holding the sale of assets to be valid that “if the sale had not taken place and should the *367 plaintiffs have executed on the equipment they would have realized nothing from the execution as Mr. Sylvester held a first mortgage on the property.” We disagree. Although the promissory note held by Oscar Sylvester, dated December 8, 1966, is paraphed to identify it with an act of chattel mortgage, that chattel mortgage was never introduced in evidence, and the record thus does not show what property was affected by it. There is no factual basis, therefore, for holding that such a mortgage existed or that it covered all of the property owned by the corporation. Even if we should assume that a chattel mortgage was executed by the corporation as security for the above-mentioned note and that it covered all of the equipment and machinery owned by that company in 1966, such a mortgage could not cover or encumber the bank accounts, the cash on hand and the accounts receivable owned by the corporation in 1969 when the sale of all of its assets took place. It would not cover the equipment or supplies which were acquired after the mortgage was executed, and it would not have covered the certificate which was issued by the Louisiana Public Service Commission. The deed dated April 11, 1969, purported to convey more property than could have been affected by any mortgage which Sylvester may have held, and plaintiffs thus were injured by the sale at least of these additional assets.
The evidence also is convincing to the effect that when the mortgage note involved here was executed by the corporation in 1966, the corporation was the “alter ego” of Oscar Sylvester, and that any purported indebtedness from the corporation to Sylvester was extinguished by confusion. The applicable rule was concisely stated by our Supreme Court in Keller v. Haas, 202 La. 486, 12 So.2d 238 (1943), as follows:
“It is well settled that where an individual forms a corporation of which he is the sole and only stockholder or owns such control of the stock that the act of the corporation is his own, then he may not use the screen of corporate entity to absolve himself from responsibility.”
The evidence in the instant suit shows that in 1966 Oscar Sylvester was the sole owner and manager of the corporation and its business. He, in fact, was merely doing business in the corporate name. The mortgage note which was executed in December of that year to “Holder or Holders” was confected by Sylvester merely as a convenience to him in providing security for loans which he obtained from banks and individuals. The issue is not before us here, although plaintiffs contend that it is, as to whether Sylvester should be held to be personally liable to plaintiffs under the tort judgment. Defendants argue that that issue was determined adversely to plaintiffs in the tort action and that it is now res judicata. We express no opinion on that question. So far as we know, however, the issue has never been presented in this case as to whether in view of the doctrine of alter ego, a note and mortgage from the corporation (the alter ego of Sylvester) to Sylvester personally, may be used or construed in such a manner as to prevent creditors of the corporation from executing on those assets.
We are convinced that the alleged chattel mortgage from the corporation to Oscar Sylvester cannot be and could not have been used to prevent plaintiffs from executing on corporate assets. We hold, therefore, that plaintiffs would be injured if the sale of the assets of the corporation is allowed to stand.
We have concluded that the sale of all of the assets of Sylvester House Moving, Inc., on April 11, 1969, was made with intent to defraud the creditors. We base that conclusion on several facts, some of which are: (1) The sale was made less than one month after a judgment for $7,-950.00 in favor of plaintiffs and against the corporation became final. (2) The sale of all assets of the corporation was made entirely on credit, no cash consideration having been paid by the vendees. (3) At the *368 time of the sale one half of all of the stock in the corporation was owned by Vidrine and the remainder was owned by Oscar Sylvester, the two other shareholders having no real interest in or right of ownership to the one or two shares listed in their names. By agreement of these two shareholders the corporation was divested of all of its assets immediately after a large judgment against the corporation became final. Vidrine was deeded the same interest in the assets which he had before the sale, and Oscar Sylvester’s son was deeded the interest which the older Sylvester formerly owned. There is a strong indication, therefore, that the purpose of the sale actually was to divest the corporation of any assets which might be subject to execution, while permitting the owners to continue to use those assets. (4) Oscar Sylvester’s son, who was named as one of the vendees in the sale, was a college student when the sale took place. He has never taken any part in the operation of the business, he paid nothing for the one-half interest which was conveyed to him, and he has received no income from the use of the equipment. He testified that his father simply wanted to keep the business in the family, and that when the house moving business eventually pays out the mortgage indebtedness to Oscar Sylvester, without any effort on the part of the son, then young Sylvester will own a one-half interest in that business. (5) After the sale was made on April 11, 1969, the business continued to operate under the same name, in the same manner and at the same location as it had formerly been conducted. The premises on which the equipment was stored were owned by Oscar Sylvester, and yet no rent was paid to him for the use of those premises after that date. (6) Vidrine managed the business after the sale was completed. Although he purportedly owned one half of the entire business, and did not have to share any profits with young Sylvester, he nevertheless received only $450.00 per month for his services. This was true even though the business took in substantial sums of money from its operations. The first month after the sale took place the receipts amounted to $4,227.36. No satisfactory explanation is given as to what disposition was made as to the balance of the funds taken in, especially since young Sylvester received none of them and no credits were applied on the indebtedness which allegedly was owed to Oscar Sylvester. These circumstances suggest that Oscar Sylvester still owned a substantial interest in the business, despite the sale, and that he was receiving a part of the earnings.
All of the above-mentioned facts convince us that the primary reason for selling all of the assets of the corporation was to avoid payment of the judgment indebtedness to plaintiffs, and thus to defraud them.
The last prerequisite for the maintenance of a revocatory action also is present, that being that the indebtedness of the corporation to plaintiffs pre-existed the sale and that it accrued before April 11, 1969.
Our conclusion is that plaintiffs are entitled to judgment revoking the sale from the corporation to Vidrine and James Sylvester, dated April 11, 1969. The trial judge erred in rejecting that part of plaintiffs’ demands, and the judgment of the trial court thus must be reversed.
Pursuant to the allegations and prayer contained in plaintiffs’ petition, the trial court signed an ex parte order when the suit was filed on October 15, 1969, the pertinent portions of which order read as follows:
“IT IS ORDERED, ADJUDGED AND DECREED the Sheriff of the Parish of Evangeline, State of Louisiana, be appointed receiver of all the property and effects of said Sylvester House Moving, Inc. which were held at the time of the sale on April 11, 1969, by Sylvester House Moving, Inc., and were transferred to Adam Vidrine, Jr. and James Warren Sylvester, as more fully appears by an instrument entitled “Cash Sale and Assumption”, No. 269,613, Ville Platte, Parish of Evangeline, Louisiana.
*369 “IT IS FURTHER ORDERED, ADJUDGED AND DECREED that a temporary restraining- order issue herein without bond, directed to Oscar Sylvester, Jr., James Warren Sylvester, and Adam Vidrine, Jr., restraining, enjoining and prohibiting said persons from disposing of any of said property, or paying away any of the proceeds thereof, or in anywise interfering therewith.”
On November 4, 1969, defendants obtained the issuance of a rule directing plaintiff to show cause why that order should not be vacated and why plaintiffs should not be condemned to pay damages and attorney’s fees to defendants because of the wrongful issuance of said order. The rule came up for hearing on November 24, 1969, and on that date, following the hearing, the above-mentioned order was rescinded, and defendants’ right to claim damages was reserved. The case was tried on its merits later, and as we have already noted, judgment was rendered by the trial court on June 18, 1970, rejecting plaintiffs’ demands and awarding damages and attorney’s fees to defendants. For reasons assigned, we have concluded that the trial court erred in rejecting plaintiffs’ demands that the deed executed on April 11, 1969, be annulled as to plaintiffs. We also think the court erred in awarding damages and attorney’s fees to defendants under the circumstances presented here.
LSA-R.S. 12:151, subd. A provides that the court may, after trial, appoint a receiver to take charge of the corporation’s property when it is made to appear, in a proceeding instituted against the corporation, either that the directors or officers are jeopardizing the rights of creditors by “misapplying the assets of the corporation,” or that “the corporation is insolvent.” LSA-R.S. 12:151, subd. C provides:
“The court may, ex parte, pending trial, (1) appoint a temporary receiver whose authority shall cease upon appointment of a receiver after trial or upon dismissal of the proceeding, (2) on the applicant furnishing security in the amount fixed by the court, enjoin the corporation and its directors, officers, agents and shareholders from disposing of its property or changing the status of its affairs to the injury of the applicant, and (3) stay proceedings by other persons against the corporation’s property.”
The petition in the instant suit adequately alleged a cause of action for the appointment of a receiver under LSA-R.S. 12:-151, subd. A. The court was authorized under LSA-R.S. 12:151, subd. C to issue an order, ex parte, pending trial, appointing a temporary receiver and enjoining the corporation from disposing of its property. There thus was specific statutory authorization for the order which was issued by the court, and plaintiffs were entitled to both types of relief granted by that order. We see nothing illegal or wrongful about either the appointment of the receiver or the granting of the temporary restraining order.
Defendants refer t» the appointment of the receiver and the granting of the restraining order as a “seizure,” and it is on that basis that damages are claimed. The trial judge also considered the ex parte order of the court as being a seizure, and he awarded damages on the ground that “the corporation” suffered a loss because “it was deprived of operating its business for approximately six (6) weeks,” that Vidrine was ridiculed “because his business was seized,” and that an additional sum should be allowed as attorney’s fees “to dissolve the order of seizure.”
The record shows that the property involved here was never seized at any time. No writ of any kind authorizing a seizure was ever issued, and there is no return in the record indicating that a seizure of any kind was ever made. Defendant Vidrine testified that a deputy sheriff told him not to use the equipment. Neither that deputy nor anyone else from the Sheriff’s office were called as witnesses, however, and there is no other evidence in the record which in any manner could have given Vi-drine the impression that the property was *370 seized. Vidrine admits that all of the equipment remained in his possession and custody, and that none of it was ever locked up, removed or held by the Sheriff. The record contains other evidence, including films, which indicates that the equipment did not remain idle, but that it actually was used between the time the'above-mentioned order was issued and the time it was vacated. We conclude that' defendants and the trial court were in error in assuming that the equipment had been seized.
It is true that defendants were prohibited by the temporary restraining order from “disposing of any of said property, or paying away any of the proceeds thereof, or in anywise interfering therewith.” Plaintiffs, however, were entitled to that relief in order to preserve the property which the corporation had fraudulently attempted to place beyond reach of plaintiffs in their efforts to execute on their judgment.
Defendants argue, however, that the restraining order was wrongfully issued because of technical defects in the pleadings. They contend first that the restraining order was illegal since plaintiffs failed to show, by verified petition, or by supporting affidavit, that immediate and irreparable injury would result before notice and hearing, all as required by LSA-C.C.P. art. 3603. We find, however, that the petition was verified, and that the allegations in it are sufficient to meet all of the requirements of the cited article of the Code of Civil Procedure.
Defendants argue further that the restraining order was wrongfully issued because no security was required by the court, as provided in Article 3610, and that other formalities required by LSA-C.C.P. art. 3604 and 3605 were not observed. We find that none of these irregularities are sufficient to nullify the restraining order, and that in any event the question as to the validity of that order had become moot before the motion to dissolve the order was filed. Under the provisions of LSA-C.C.P. art. 3604, a temporary restraining order expires, by operation of law, ten days after it is issued, unless the court specifies a shorter time. The restraining order was issued on October 15, 1969, and it expired on October 25. Defendants did not file their motion to set aside the order until November 4, which was several days after the restraining order had already expired. We thus find no merit to defendants’ argument that the temporary restraining order was wrongfully issued or that defendants are entitled to recover damages or attorney’s fees arising out of the issuance of such an order.
We cannot say that the trial court erred in rescinding its original order appointing a temporary receiver, since that is a matter which is left largely to the discretion of the court. Also, the trial judge did not err in vacating the temporary restraining order, because that order had already expired and was ineffective. We conclude, however, that the trial court erred in holding that the order which was issued on October 15, 1969, was wrongful or prejudicial to defendants, and in awarding damages and attorney’s fees to said defendants because of the granting of said order. .
Plaintiffs have prayed for the appointment of a permanent receiver. The case has now been tried, and we believe sufficient facts have been presented to entitle them to that relief. We have decided, however, to make no such appointment now, but instead to remand the case to the trial court in order that plaintiffs may seek that type of relief in further pleadings, if they elect to do so.
Plaintiffs also are entitled to the injunctive relief which they seek, in order to preserve their rights to execute the judgment they have against the corporation. An injunction will be granted, therefore, prohibiting defendants from disposing of any of the property which is described in the deed, dated April 11, 1969, until further orders of the trial court.
*371 For the reasons herein assigned the judgment appealed from, being the judgment rendered by the trial court on June 18, 1970, is hereby reversed, and judgment is hereby rendered in favor of plaintiffs and against defendants, as follows: (1) Decreeing the sale from Sylvester House Moving, Inc., to Adam Vidrine, Jr., and James Warren Sylvester, dated April 11, 1969, to be invalid and null and void as against plaintiffs; (2) rejecting all demands or reconventional demands of defendants for damages and attorney’s fees; (3) reserving to plaintiffs the right to seek the appointment of a receiver to take charge of the property of Sylvester House Moving, Inc., pursuant to law; (4) ordering defendants Adam Vidrine, Jr., and James Warren Sylvester to account for all property received by them pursuant to the above-described sale, and to account for all proceeds received by them from the resale of any of such property; (5) enjoining and prohibiting defendants from disposing of, damaging or destroying any of the property described in the above-described deed, dated April 11, 1969, or from disposing of the proceeds from the resale of any such property, until said property or proceeds has been delivered to the receiver who may be appointed by the court or until further orders of the district court; (6) condemning defendants, Sylvester House Moving, Inc., Adam Vidrine, Jr., James Warren Sylvester and Oscar Sylvester, Jr., to pay all costs of this suit and all costs of this appeal-; and (7) remanding the case to the district court for further proceedings consistent with the views herein expressed.
Reversed, rendered and remanded.